43 So.2d 889

**HANEY et al. v. RAY et al.**

6 Div. 945.

Supreme Court of Alabama.

Jan. 19, 1950.

Finis E. St. John, of Cullman, for appellants.

Wm. E. James, of Cullman, for appellees.

BROWN, Justice.

J. S. Ray, a resident of Cullman County, died July 2, 1934, leaving surviving his widow Virginia Ray and several adult heirs and next of kin, children and grandchildren, including the complainants and a son John S. Ray, who with his mother Virginia Ray (now in her 85th year), are the defendants to the bill.

The land in controversy was the homestead of the deceased and had been for many years. It consisted of a well improved farm of 49 acres in a good state of cultivation with a residence, barn and tenant house located in a good community convenient to church and schools and on a main public road and mail route, a short distance from Cullman, the county seat, Vinemont, a railroad town, and Eva a small village.

There has been no administration on the estate and no steps have been taken, up to the filing of the bill, to have homestead exemptions and dower set apart to the widow. She has been in the occupancy of said home, using and renting the same and receiving the usufruct thereof under her quarantine rights.—Code of 1940, Title 34, § 50, Clancy v. Stephens, 92 Ala. 577, 9 So. 522, 524.

The bill filed by the adult heirs alleges that while the said homestead lands are less in area than 160 acres, said lands are worth more than $2,000 in value, and it seeks to have the homestead and dower rights of the widow ascertained and set apart to her and for a sale of any excess over such rights for division amongst the heirs and next of kin of said J. S. Ray and for general relief.

The defendants filed their answer admitting the formal averments of the bill but denied that J. S. Ray owned the fee simple title to the lands described in the bill and that said decedent owed no debts at the time of his death, admitting that no administration was had on his estate; that the complainants and respondents are the widow and only heirs at law of said decedent; that dower has not been assigned to the widow. The answer denies that the lands exceed in value the amount exempted by law to the widow as a homestead and the mortgage thereon and further denies "that any of the complainants have any interest in said lands whatsoever." The answer of the respondent Virginia Ray further alleges, " * * * as a basis for cross bill, that there was a mortgage on the homestead of her husband J. S. Ray, deceased, on which there was over $200.00 due at the time of his death. That she paid the same off with her money. (A copy of the mortgage was made exhibit to the answer and cross-bill.) That said land and the mortgage on the same were worth less than $2,200.00 at the time of the death of her said husband, J. S. Ray, on the 2nd day of July, 1933. That she is entitled to have all of said land set apart to her as her homestead and have title in fee simple adjudged to her to same because she paid off said mortgage and said homestead was worth less in value than $2,200.00 at the time of her husband's death, they having no minor children on said date of July 2, 1933."

The widow prays in said cross-bill that she be subrogated to the rights of the mortgagee, "that all of said lands be adjudicated to have been worth less than $2,200.00 at the date of the death of her husband. * * * And that a decree be entered vesting in her the absolute title in fee simple."

The answer and cross-bill were amended by changing the date of J. S. Ray's death, alleging that the same occurred in July 1934 and adding the allegation "that all the land left by the husband J. S. Ray of respondent Virginia Ray at the time of his death constituted his homestead." The complainants' answer to the amended cross-bill "denies each and every material averment contained in said cross-bill as amended."

The parties took the depositions of 20 odd witnesses before commissioners touching the character, condition, desirability and the value of the property constituting the homestead of said decedent at the time of his death. The only witness whose testimony was given *ore tenus* was that of the widow Virginia Ray who expressed no opinion as to the value of the farm home where she had spent the better part of her life with its joys and memories. She testified that she paid the mortgage with money of her own and she had not given her written consent for the homestead to be sold; that she did not want it sold, that it is "home sweet home to me", or words to that effect.

The testimony of the other witnesses goes to show that they were long residents of the community, were familiar with the property, its character and condition and

226

the improvements thereon. Their testimony fixed the value from $2,000 to $5,000. None of them fixed it at less than $2,000 and the testimony of the defendant John S. Ray fixed it at from $2,000 to $2,100 and he also testified that in some negotiations with the other heirs as to the purchase of the property they wanted $6,000, which, he said, was far too much for him to pay and he called off the negotiations.

There was no allegation or proof touching the solvency or insolvency of the deceased's estate nor was there any proof that the homestead was the only real estate owned by said decedent at the time of his death.

On submission for final decree upon the pleadings and proof as noted by the parties and filed with the register, as provided by Equity Rule of Practice No. 57, Code of 1940, Tit. 7, Appendix, p. 1095, after commenting on the evidence the court decreed as follows: "The complainants have alleged that this homestead exceeds in value the amount exempt to the widow, and with the state of the proof as it is the Court is of the opinion that the complainants have failed to carry the burden of proving this allegation. The Court is, therefore, of the opinion that the complainants are not entitled to the relief prayed, but that the respondents are entitled to relief under their cross-bill. * * *"

The case was submitted here on appellees' motion to dismiss the appeal and on the merits. The appellees insist that the decree is not final and will not support the appeal under the provisions of Code of 1940, Tit. 7, § 754.

■ We are of opinion that this contention cannot be sustained. The decree clearly settles the equities between the parties and adjudges that the complainants were not entitled to relief and that respondents are entitled to relief under their cross-bill. If the appellants had neglected to appeal and allowed the right of appeal to become barred by the statute, their rights and interests would have been lost and finally determined. Cochran et al. v. Miller, 74 Ala. 50, 60, 63; Ex parte Elyton Land Co., 104 Ala. 88, 15 So. 939. The motion to dismiss the appeal is, therefore, denied.

■ In the examination of the witness as to the value of the land as of July 3, 1934, some stress was urged that this was during the depression following World War I. That banks were closed and it was difficult to obtain loans. That there was little or no sale or demand for real property. These are facts of which courts take judicial notice and the courts also take judicial knowledge of the fact that said depression at its worst did not destroy the intrinsic value of farm property and the mere fact that there was no market, that no one was willing or able to buy, is not an insuperable obstacle defying the ascertainment of real values.

In De Moville v. Merchants & Farmers Bank, 233 Ala. 204, 210-211, 170 So. 756, 761, it was observed: "The yardstick of 'reasonable market value' fixed by the law in a proper case for the purpose of ascertaining values, by courts and juries, presupposes a market for the class of property, the subject-matter of the litigation, and where there is no market at the time for such property, other elements are to be taken into consideration, such as the original costs, the costs of the buildings or improvements, rents, the adaptability for future use and enjoyment, and the opinion of witnesses in a position to have a correct judgment as to the values. * * *." (See authorities cited.)

■ After due consideration we are at the conclusion, therefore, and find the facts to be that the 49 acres of land with the improvements thereon are reasonably worth $3,000 and, as a matter of law, the legal title incumbered by the mortgage to Manuel Montgomery Oden, the homestead, dower and quarantine rights of the widow Virginia Oaks Ray, passed to the heirs at law. Forman v. McAnear, 219 Ala. 157, 121 So. 538. The said widow is entitled to have such homestead set apart to her, not exceeding in value $2,000 over and above said mortgage debt and said homestead to include the residence, the barn and outhouses used in connection therewith and that she be vested with a life estate therein. Code of 1940, Tit. 7, §§ 661–697; Bank of Columbia et al. v. McElroy, 231 Ala. 454, 165 So. 105. The widow is also entitled to

have her dower interest—one-third of the remaining lands adjacent to the homestead—set apart and assigned to her, vesting in her a life estate therein. Hollis v. Watkins, 189 Ala. 292, 300, 66 So. 29. Said homestead is not subject to sale for distribution without the widow's consent in writing. Code of 1940, Tit. 7, § 661.

The decree of the circuit court is reversed and in part rendered as above indicated and is remanded to the circuit court with directions to proceed further in setting apart the widow's homestead and dower rights to her and other proceedings not inconsistent with this opinion. The costs of this appeal are taxed against the appellee and the appellant in equal parts.

Reversed, rendered in part and remanded.

FOSTER, LAWSON and STAKELY, JJ., concur.