83 So.2d 348

**Mary P. ROBERTS**

v.

**Mary Camilla ROBERTS.**

**4 Div. 849.**

Supreme Court of Alabama.

Nov. 3, 1955.

L. A. Farmer and Alto V. Lee, III, Dothan, for appellant.

518

Halstead & Whiddon, Headland, for appellee.

GOODWYN, Justice.

This is an appeal from a decree of the circuit court of Houston County, in equity, overruling appellant's exceptions to the report of commissioners setting aside to her, as the widow of J. A. Roberts, deceased, an exemption in lieu of a homestead out of the real estate owned by said decedent at the time of his death.

J. A. Roberts died intestate on February 27, 1953, leaving surviving him his widow, the appellant, and one child, the appellee, born of a former marriage. At the time of decedent's death appellee was a minor, eighteen years of age. Her disabilities of non-age were removed on April 2, 1954.

On March 7, 1953, appellant was appointed by the probate court of Houston County as administratrix of her husband's estate, and on the same day qualified as such administratrix. The estate consisted of certain personal property and about 281 acres of farm lands in Houston County. There is no question about the solvency of the estate.

On August 7, 1954, appellant filed in the probate court of Houston County a petition to have allotted to her out of said lands an exemption in lieu of homestead. Code 1940, Tit. 7, § 675; Tit. 7, § 662, as amended by Act No. 911, appvd. Sept. 12, 1951, Gen.Acts Ala.1951, pp. 1558–1559. On the same day three commissioners (B. W. Pearson, Roy L. Martin and W. P. McArthur) were appointed by the court to set off and allot the exemption. Section 675, Tit. 7, supra..

On August 11, 1954, appellee filed in the circuit court of Houston County, in equity, a petition for removal of the administration of the estate to that court. Code 1940, Tit. 13, § 139. Order for removal was entered on the same day.

On August 17, 1954, B. W. Pearson resigned as a commissioner. On the same day appellant filed a petition in the equity court praying for appointment of a commissioner to take Pearson's place. Pursuant to written consent of the parties, Pearson's resignation was accepted and, in the same order, the equity court appointed William A. Womack in his stead.

The commissioners set aside and allotted to appellant, as exempt to her in lieu of homestead, forty acres of the farm lands (N½ of SW¼ of SW¼, Section 23; and N½ of SE¼ of SE¼, Section 22, all in Township 2, Range 28, Houston County). The report of the commissioners was signed only by Womack and McArthur. With respect to the failure of the third commis-

sioner, Martin, to sign, the report recites the following:

"They further report that the three named Commissioners have met and considered this matter. That they have not been able to attain a unanimous decision with respect to the lands to be set aside and allotted. That the undersigned Commissioners see no opportunity for a unanimous report of the three Commissioners, therefore, they make this report to the Court."

Appellant filed exceptions to the report which, after a hearing and the taking of testimony orally before the chancellor, were overruled and the report confirmed by decree rendered on April 2, 1955. This appeal is from that decree.

There were nine exceptions to the report. However, they embrace only two basic objections, viz.: I. That the report, to be effective, should have been the unanimous report of all three commissioners. II. That the real estate set off and allotted to appellant was not of the value of $6,000 at the time of the death of J. A. Roberts.

The chancellor, in his decree, disposed of these objections as follows:

"The Court will consider, first, the exceptions to the report of the Commissioners. They may be divided in two general groups. The *first* group raises the proposition that the report is signed by only Two of the commissioners. The *second* group raises the proposition that the real estate set aside is less, in value, than $6000.00.

"As to the *first* group of exceptions, that is, the report was not unanimous and was only signed and made by two of the three commissioners, the Court is of the opinion, under the testimony in this case or, rather, in the light of the testimony in this case, it was not necessary for the report to be signed by all three of the commissioners. The testimony shows, by stipulations to that effect, that the non-signing commissioner was present and took part in the deliberations of the Commissioners, in the discussions as to the value of the real estate but disagreed with the other commissioners and declined to sign the report. (29 C.J. subsec. (4) of Sec. 431, page 975).

"As to the *second* group of exceptions to the report, that is, that the real estate set aside by said report is less, in value, than $6000.00, the Court is fully and completely convinced from the testimony that the real estate allotted to Mrs. Mary P. Roberts, as the widow of J. A. Roberts deceased, as her exemption in the real estate owned by her husband at the time of his death in lieu of a homestead was fully worth, at the time of the death of said J. A. Roberts, the sum of $6000.00 and probably more."

### I.

Code 1940, Tit. 7, § 675, supra, provides for appointment by the court of three commissioners and, with respect to the authorized exemption in lieu of homestead, requires that the commissioners "shall set off and allot the same by metes and bounds; and within ten days thereafter they shall make a written report to the court of the exemptions set off and allotted by them." The question is, Does this mean that all three commissioners must agree on the exemption or will the action of a majority suffice? It is stated in appellant's brief that no decision determinative of the question has been found. Although we do not find any case specifically construing Section 675, Tit. 7, supra, on the question, it seems to us that what was said in the early case of Chambers v. Perry, 17 Ala. 726, 733, is of controlling influence here. In that case five commissioners were appointed by the register in chancery to allot and set aside an heir's share in an estate. It was held that a report executed by three of the commissioners was valid. As there said:

"It is again objected to the report of the commissioners, that but three of them executed it, though it was directed to five. But we consider this question settled by the case of Jennings & Graham v. Adm'r of Jenkins, 9 Ala. 285. The court then said, 'that in gen-

eral there can be no doubt that a power must be exercised in strict conformity with the authority by which it is authorized to be executed, and that even unessential forms must be strictly pursued, if required to be observed in its execution,' but that this rule did not apply to 'business of a public or judicial nature. In such cases, a power entrusted to several may be executed by a majority.' And in that case it was held, that the sale of land by two commissioners, under a commission from the Orphans' Court appointing three, was valid. * * *"

In Townsend v. Hazard, 9 R.I. 436, 442–444, the question was whether a report of commissioners appointed to make partition of an estate must be unanimous to render it valid. In holding that a report executed by a majority of the commissioners was valid, it was there said:

"We do not think the report of the commissioners was invalid merely because it was not unanimous. We think the true rule is, that where three or more persons are charged with a judicial or quasi judicial function under an authority derived, not from the parties in interest merely, but from a law or statute of the state, though all must hear and deliberate together, a majority may decide, unless it is otherwise provided. The counsel for the defendants admit that this is a rule when the power to be exercised is of a public nature, but contend that in mere private causes the decision must be unanimous, though the power to decide be given by statute; a power being public, they claim, within the meaning of the rule, not because given by statute, but because the business to be transacted is a matter of public concern. Most of the cases cited, in which a majority decision has been sustained, are cases in which the public was interested, either in the question decided or in the matter or proceeding in pursuance of which the question arose. In such cases the decision of a majority would be valid, even if the rule were subject to the limitation for which the defend-

ants contend; and, doubtless, the language used by the courts, in deciding some of them, favors the inference of such a limitation. But we have not been referred to any case in which it has been held that the rule does not extend, in the case of persons authorized to decide by law, or public statute, to cases in which the public has no interest beyond its general interest that there shall be an end of litigation. * * *.

* * * * * *

"A principal reason why unanimity is not required, is the delay which might ensue if it were required. This reason is applicable in private causes as well as in matters of public concern. Indeed a cause becomes public, in a certain sense, by its pendency in court, and the public is interested to have it disposed of with as little delay as is consistent with the proper administration of justice. * * *."

Bearing on the question is the following from Carolina Sav. Bank v. Evans, 28 S.C. 521, 6 S.E. 321, 322:

"* * * At common law the general rule was thus stated by Eyre, C. J., in Grindley v. Baker, 1 Bos. & P. 236: 'Where a number of persons are intrusted with powers, not of mere private confidence, but in some respects of a general nature, and all of them are regularly assembled, the majority will conclude the minority, and their act will be the act of the whole.' This rule has been adopted in some of the states of the Union; and, where it has, the test resorted to for the purpose of determining whether the act of a majority will be valid seems to be whether the act to be done was of a public or private nature, whether it affected the public generally or only private individuals. See People v. Nichols, 52 N.Y. 478, 11 Am.Rep. 734, and also [First Nat.] Bank v. Mount Tabor, 52 Vt. 87, reported in 36 Am.Rep. 734, where the authorities are elaborately reviewed. In that case, Shaw, C. J., is quoted as having laid down the rule in

Williams v. School-District, 21 Pick., Mass. 75, in the following language: 'Where a body or board of officers is constituted by law to perform a trust for the public, or to execute a power or perform a duty prescribed by law, it is not necessary that all should concur in the act done. The act of the majority is the act of the body.' From this language it would seem that this eminent judge did not regard the rule as confined to the case where the act to be done was of a public nature, but that it should be extended so as to cover a case where the appointment was made by public authority; for he says that where the appointment is 'to perform a trust for the public, or to execute a power or perform a duty prescribed by law,' the act of the majority would be sufficient. * * * "

The general rule is thus stated in 67 C.J. S., Officers, § 109, pp. 394, 395:

"In the absence of a statutory provision to the contrary, where official authority is conferred on a board or commission composed of three or more persons, such authority may be exercised by a majority of the members of the board, provided all have had notice and an opportunity to act, at least in the absence of extraordinary circumstances."

■ The trial court did not err in overruling the exceptions going to failure of all three commissioners to execute the report.

## II.

■ Appellant's insistence is that the lands set apart to her were less in value than $6,000 at the time of the death of J. A. Roberts. We have carefully examined the evidence, and have considered it in the light of two applicable presumptions. First, we have held that a report of commissioners as to the value of land set aside as a homestead is prima facie correct and places the burden of proof on the exceptor to overcome that conclusion of fact by clear and convincing evidence. Harrell v. Henderson, 260 Ala. 211, 213, 69 So.2d 868; Tolar v. Clemons, 250 Ala. 16, 17, 33 So.2d 21; Hardy v. Morgan, 238 Ala. 251, 253, 189 So. 878. Second, there is an additional presumption in favor of the finding of the chancellor who saw and heard the witnesses. Gray v. Weatherford, 227 Ala. 324, 326, 149 So. 819. We are clear to the conclusion that appellant failed to meet the burden imposed on her of proving, by clear and convincing evidence, that the property set aside to her was less in value than $6,000 at the time of decedent's death. There is ample evidence to support the decree overruling the exceptions to the commissioners' report. No good purpose would be served by detailing the evidence. Suffice it to say that it was in conflict. Appellant's witnesses testified that the value was less than $6,000 while appellee's witnesses confirmed the value at $6,000 or more.

■ An additional point argued by appellant is that the record does not show that the commissioners were sworn as required by Code 1940, Tit. 7, § 699. However, we do not find that this objection was taken in the trial court. The instant proceeding is ancillary to the administration of the estate. Accordingly, if it be conceded that the commissioners failed to take the prescribed oath, such failure was, at most, an irregularity and an objection thereto cannot be raised here for the first time. Tatum v. Williams, 235 Ala. 114, 115, 177 So. 629; Cogburn v. Callier, 213 Ala. 46, 49, 104 So. 330. Also, the legal presumption is that the commissioners have done their duty until the contrary is shown. Bryant's Heirs v. Stearns, 16 Ala. 302.

The decree appealed from is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.